LIBERTY MUTUAL INSURANCE COMPANY v CURTIS NOLL
CORPORATION

Docket No. 53400. Submitted June 9, 1981, at Detroit.—Decided
January 5, 1982.

> In 1958, the Foote-Burt Company designed and manufactured a
> certain machine which it sold to General Motors Corporation.
> In 1965, the Foote-Burt Company merged into Curtis Noll
> Corporation, with Foote-Burt being operated as a separate
> division. In 1967, Reynolds Metals Company entered into an
> agreement with Curtis Noll to purchase the Foote-Burt divi-
> sion. The Foote-Burt operation was thereafter operated as the
> Footburt Reynolds Machinery Division, Reynolds Metals Com-
> pany. In 1972, an employee of General Motors was injured by
> the machine manufactured in 1958. The injured person brought
> a products liability action against Reynolds Metals on the
> theory of successor liability. Reynolds Metals tendered to Curtis
> Noll the defense of that action, and, when Curtis Noll declined
> to assume the defense, Reynolds Metals, by and through its
> insurer, Liberty Mutual Insurance Company, settled the claim
> with the injured party after having received an adverse judg-
> ment in the jury trial of that claim. Liberty Mutual Insurance
> Company, individually and as assignee or subrogee of Reynolds
> Metals, brought an action in Wayne Circuit Court against
> Curtis Noll seeking both common-law and contractual indem-
> nity. Susan J. Borman, J., held that, as a matter of law,
> plaintiff was not entitled to common-law indemnity. Judge
> Borman further ruled that the contract language was ambigu-
> ous and, accordingly, submitted to the jury the question of

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indemnity §§ 1, 20, 21.
[2] 41 Am Jur 2d, Indemnity § 25.
   63 Am Jur 2d, Products Liability §§ 157, 158.
[3, 5] 41 Am Jur 2d, Indemnity § 13.
[4] 20 Am Jur 2d, Courts § 203.
[6] 17 Am Jur 2d, Contracts §§ 22, 241.
[7] 29 Am Jur 2d, Evidence §§ 251-256.
[8] 75 Am Jur 2d, Trial §§ 91, 256.
[9] 5 Am Jur 2d, Appeal and Error § 894.

whether indemnity had been intended under the facts as established. The jury returned a verdict of no cause of action. Plaintiff appeals. Defendant cross-appeals. *Held:*

1. The trial court properly ruled that as between successor owners of a manufacturer of a defective product there exists no right to common-law indemnity.

2. The decision of a Louisiana court relative to the effect of the contractual indemnity language at issue is not binding on Michigan courts, since Louisiana law with respect to the type of liability which attaches upon successor owners upon merger or a sale of assets differs from Michigan law.

3. Since the indemnity language in the contract was ambiguous, the trial court properly submitted to the jury the question of the meaning and intent of the language.

4. The statutory prohibition against mentioning insurance is applicable only in original actions by an injured party against an insured. Since the existence of insurance was found by the trial court to be relevant to the question of the meaning and intent of the indemnity language in the contract of sale of the corporate assets, no error resulted from the references to the fact that insurance coverage existed.

Affirmed.

1. INDEMNITY — ACTIONS — PARTIES.

Common-law indemnity exists where the wrongful act of one results in liability being imposed on another who is free from active or causal negligence; there exists no right to indemnification between actual joint tortfeasors or tortfeasors in pari delicto.

2. PRODUCTS LIABILITY — INDEMNITY — SUCCESSOR CORPORATION.

There exists no right to common-law indemnity between successor owners of a manufacturing company relative to a products liability claim arising out of a product made by the manufacturer prior to the ownership of either of the successor owners.

3. INDEMNITY — JUDICIAL CONSTRUCTION — CONTRACTS.

An indemnity contract is construed in accordance with the rules for the construction of contracts generally; indemnity contracts will be construed so as to effectuate the intention of the parties.

4. COURTS — DECISIONS OF FOREIGN COURTS.

The decision of a court in another state on a question similar to the one presented in an action brought in Michigan is not binding as precedent upon the Michigan court where the decision of the out-of-state court is inconsistent with Michigan law,

even where the parties involved in the Michigan action are the same as the parties in the out-of-state action.

5. INDEMNITY — JUDICIAL CONSTRUCTION — CONTRACTS.

Indemnity contracts are construed most strictly against the party seeking indemnification.

6. CONTRACTS — JUDICIAL CONSTRUCTION — JURY QUESTIONS.

The interpretation of ambiguous language in a contract is a question for the trier of fact.

7. EVIDENCE — RELEVANCY — APPEAL.

The determination of whether evidence is sufficiently relevant to warrant admission at trial is a question addressed to the discretion of the trial court; the trial court's determination as to the admissibility of evidence will not be set aside on appeal in the absence of a showing of an abuse of discretion.

8. INSURANCE — TRIAL — STATUTES.

The statutory prohibition against mentioning the existence of a policy of insurance is not applicable in an indemnity action brought by an insurance company.

9. APPEAL — JURY INSTRUCTIONS.

The Court of Appeals reviews jury instructions in their entirety.

*Seavitt, Westcott, Stowe, Magnuson & Beeby* (by *Thomas L. Misuraca*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* and *Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh*), of counsel, for defendant.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

H. R. GAGE, J. Plaintiff, as subrogee of its insured, appeals as of right from a jury verdict of no cause of action and an order denying its motion for a directed verdict. In a prior action, plaintiff's insured, Footburt Reynolds Machinery Division,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Reynolds Metals Company (Reynolds), was sued on the basis of products liability for injuries sustained from a machine manufactured in 1958 by the Foote-Burt Company. Reynolds tendered the defense to defendant, Curtis Noll Corporation, which declined to assume it. Plaintiff, on behalf of Reynolds, ultimately settled the claim with the injured party and brought the instant action seeking common-law and contractual indemnification from defendant.

The relationship of the parties to each other is rather complex. The Foote-Burt Company designed the machine in question in 1958, and subsequently sold it to Detroit Diesel Allison Division of the. General Motors Corporation (Diesel). Diesel placed the machine into use at its Detroit plant. In 1965, the Foote-Burt Company merged into defendant, Curtis Noll Corporation, the merger occurring in Ohio. Defendant continued to operate the company as a separate division. On November 1, 1967, defendant and Reynolds Metals Company entered into an agreement whereby the latter agreed to purchase the division from defendant. Reynolds Metals Company carried on the business as a separate division. In 1972, an employee of Diesel was injured on the machine in question and brought suit against Reynolds under a theory of successor liability. It is from Reynolds' settlement of that suit that the instant action arises.

Plaintiff first argues that the trial court erred in ruling as a matter of law that it was not entitled to common-law indemnification. The court determined that the liability of either Reynolds or defendant for injuries resulting from the defective machine could arise solely by virtue of the fact that each was a successor corporation to the original manufacturer. See *Turner v Bituminous Casu-*

*alty Co,* 397 Mich 406; 244 NW2d 873 (1976). It determined that the liability of each was vicarious in nature precluding any right to common-law indemnification.

This Court set forth the basic principles of common-law indemnity in *Provencal v Parker,* 66 Mich App 431, 435-436; 239 NW2d 623 (1976):

"Indemnification rests upon the equitable principle of a right to restitution. *Dale v Whiteman* [388 Mich 698; 202 NW2d 797 (1972)]. The theory of indemnity is that where the wrongful act of one results in liability being imposed on another, such other person may have indemnity from the person actually guilty of the wrong. *Hart Twp v Noret,* 191 Mich 427; 158 NW 17 (1916), *Detroit, G H & M R Co v Boomer,* 194 Mich 52; 160 NW 542 (1916), *Village of Portland v Citizens Telephone Co,* 206 Mich 632; 173 NW 382 (1919), *Indemnity Insurance Co of North America v Otis Elevator Co,* 315 Mich 393; 24 NW2d 104 (1946). The party seeking indemnity must plead and prove freedom on his part from personal fault. *Indemnity Insurance Co of North America v Otis Elevator Co, supra, Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965). This has been interpreted to mean that the party seeking indemnity must be free from active or causal negligence, *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424; 210 NW2d 448 (1973), *lv den* 391 Mich 754 (1973), *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974). There is no right of indemnification between actual joint tortfeasors or tortfeasors in pari delicto."

Reynolds' liability for the defective machine arose solely because it was a corporate successor to the manufacturer under *Turner.* Likewise, any potential liability on the part of defendant to the injured party could arise solely under *Turner.* This liability is vicarious in nature. *Trimper v Bruno-Sherman Corp,* 436 F Supp 349, 351 (ED Mich,

1977). Because the liability of either Reynolds or defendant to the injured party could arise only under *Turner,* they are in pari delicto. Reynolds is not entitled to common-law indemnity.

This Court recently addressed a similar issue. *Langley v Harris Corp,* 103 Mich App 287; 303 NW2d 1 (1980). In *Langley,* an employee of King-Seeley Thermos Company (King-Seeley) was injured on a machine manufactured by the defendant's predecessor corporation. The plaintiff sued the defendant for negligent design and manufacture, through its predecessor, and also sued King-Seeley for negligence in knowingly allowing the plaintiff to operate the defective machine. King-Seeley was granted a summary judgment under the exclusive remedy provisions of the Worker's Disability Compensation Act, and was dismissed from the case. The defendant then filed a third-party complaint against King-Seeley for indemnification. King-Seeley was granted a summary judgment on the defendant's claim under GCR 1963, 117.2(1).

This Court affirmed. It ruled that any liability to which the defendant was subjected flowed from its predecessor corporation under *Turner.* The defendant was made to stand in the shoes of the manufacturer. The defendant could be liable to the injured party only if the manufacturer was actively negligent. One of the prerequisites of indemnity is freedom from personal fault. If active negligence on the part of the manufacturer was shown this prerequisite would not be legally present. If active negligence was not shown, the defendant would have a complete defense to any liability. *Langley, supra,* 290-291.

In the instant case, plaintiff concedes that the Foote-Burt Company was actively negligent in the

design and manufacture of the machine. Plaintiff also concedes that Reynolds' liability to the injured party was based solely upon its status as a successor corporation to the manufacturer. Thus, if *Langley* is applied to the instant case, plaintiff is not entitled to common-law indemnification.

Plaintiff seeks to distinguish *Langley* on the basis that *Langley* involved indemnification between a successor corporation and an employer whereas the instant case involves two successor corporations. The basis for the *Langley* decision, however, was not dependent upon who was the indemnitor and who the indemnitee. The crucial factor was from whom the indemnitee's liability to the injured party flowed. In *Langley,* the liability flowed from the original manufacturer. So too, in the instant case, Reynolds' liability to the injured party ultimately flowed from the manufacturer. Although Reynolds was not the immediate successor to the manufacturer, its liability to the injured party arose solely from the fact that it was a successor corporation to the manufacturer and that the manufacturer was actively negligent in the design or manufacture of the machine. Thus, as was the case in *Langley,* one of the essential prerequisites of indemnity, being without personal fault, is not legally present. The trial court did not err in ruling as a matter of law that plaintiff was not entitled to common-law indemnification from defendant.

Plaintiff next argues that the trial court erred in denying its motion for a directed verdict on its claim for contractual indemnity. That provision of the purchase agreement between Reynolds and defendant upon which plaintiff relies provided in pertinent part:

"[A]ll costs, charges, expenses, debts, liabilities and

obligations arising out of the operations of Foote-Burt prior to the Effective Date [of the agreement] shall be for the account of CURTIS NOLL, and those arising on and after the Effective Date shall be for the account of REYNOLDS. * * * Each party shall indemnify, reimburse and save the other harmless from all such items arising during its respective period of responsibility."

Plaintiff argues that, because the operation giving rise to Reynolds' liability, *i.e.,* the manufacturing of the machine, occurred prior to the effective date of the purchase agreement, it is a liability which defendant agreed to assume. The trial court was of the opinion that the provision was ambiguous.

An indemnity contract is construed in accordance with the rules for the construction of contracts generally. *Meadows v Depco Equipment Co,* 4 Mich App 370; 144 NW2d 844 (1966). The cardinal rule in the construction of indemnity contracts is to enforce them so as to effectuate the intention of the parties. *Title Guaranty & Surety Co v Roehm,* 215 Mich 586; 184 NW 414 (1921). See also *Pritts v J I Case Co,* 108 Mich App 22, 29; 310 NW2d 261 (1981).

The only evidence presented on this matter was the contract itself. Plaintiff called no witnesses to testify as to the meaning of the language used or the intent of the parties. Instead, plaintiff relied solely upon a decision of the Louisiana Court of Appeals interpreting a contractual provision identical to that involved in the instant case as imposing liability as a matter of law on the Curtis Noll Corporation under factual circumstances similar to those in the instant case. *Rosales v Dixie Mill Supply Co,* 376 So 2d 179 (La App, 1979). In *Rosales,* Curtis Noll was the party seeking indemnification from Reynolds. Reynolds was granted a summary judgment.

Plaintiff's reliance on *Rosales* is misplaced. First, Louisiana law is not binding precedent in this state. Second, the basis for the court's decision in *Rosales* is inconsistent with Michigan law. Louisiana law apparently draws a distinction between a corporate acquisition by merger and one by asset purchase. Thus, when the Foote-Burt Company merged into Curtis Noll, the latter succeeded to all of Foote-Burt's liabilities, including its negligence. When Reynolds later purchased those assets from Curtis Noll, however, under Louisiana law the liabilities remained with Curtis Noll. *Rosales, supra,* 180, fn 1. The court concluded that in the absence of any express language indemnifying it for its own negligence, Curtis Noll was not entitled to indemnification.

The *Rosales* court specifically declined to consider the effect of *Turner* on its decision. *Rosales, supra,* 181, fn 2. Michigan law does not distinguish between a corporate acquisition by merger and one by asset purchase. If the circumstances surrounding the transaction establish a basic continuity of the enterprise of the seller corporation, the purchasing corporation may be liable in products liability. It assumes the liabilities of its predecessor. *Turner, supra,* 426. Reynolds does not contend that there is no continuity of the business enterprise. Thus, under *Turner* it assumed the liabilities of its predecessor corporation.

The *Rosales* court recognized that the contractual language quoted above could constitute an ambiguity. In that case, however, the ambiguity would not be fatal to a summary judgment. As noted above, the court concluded that the negligence of Foote-Burt remained with Curtis Noll after the asset purchase by Reynolds and the contract, as a matter of law, did not indemnify

Curtis Noll for its own negligence. In the instant case, plaintiff seeks indemnification. Under Michigan law, indemnity contracts are construed most strictly against the party seeking indemnification. *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 339; 274 NW2d 58 (1978), *Robinson v A Z Shmina & Sons Co,* 96 Mich App 644, 649; 293 NW2d 661 (1980). The trial court, as did the *Rosales* court, determined that the contractual language was ambiguous. Thus, it did not err in leaving the interpretation of the contract to the jury.

Plaintiff next contends that the trial court erred in admitting into evidence, over objection, the insurance policy between plaintiff and Reynolds which was in effect at the time Reynolds purchased the assets from defendant. Under that policy Reynolds maintained coverage for liabilities of others which it assumed under contract. In closing argument, defendant argued to the jury that they could consider the policy as evidence that Reynolds intended to assume any liability of defendant at the time it entered into the purchase agreement.

Plaintiff's only objection at trial to the admission of the policy was on the grounds of relevancy. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. Admissibility rests within the trial court's discretion and will not be set aside unless there has been an abuse of that discretion. *Aetna Life Ins Co v Brooks,* 96 Mich App 310, 314; 292 NW2d 532 (1980). The trial court determined that the indemnity provision of the sales agreement was ambiguous with

regard to the intent of the parties in allocating the liabilities. The insurance policy provided that Reynolds was insured for liabilities which it assumed under contract. The weight to be given the evidence was a matter for the jury. The trial court did not abuse its discretion in admitting the policy.

Plaintiff argues for the first time on appeal that admission of the policy was unduly prejudicial because it was precluded by statute from mentioning the fact that defendant was also insured. MCL 500.3030; MSA 24.13030. Plaintiff's reliance on this statutory principle is misplaced. The statute applies only in an original action brought by an injured person or his or her personal representative in the case of death. It is not applicable to the instant action.

Further, a review of the record reveals that defendant's reference to the policy was fairly minimal during closing argument. On the other hand, plaintiff's reference to it was rather extensive. Plaintiff particularly pointed out to the jury the time which had elapsed between the issuance of the policy and the execution of the sales agreement between Reynolds and defendant. The admission into evidence of the policy does not entitle plaintiff to a new trial.

Lastly, plaintiff contends that the trial court erred in instructing the jury, over objection, that in a products liability action the cause of action accrues at the time of injury and not at the time of manufacture. Plaintiff argues that the instruction left the jury with the impression that the court was instructing them as a matter of law that the original personal injury claim arose after the effective date of the sales agreement and, thus, under the terms of the agreement, was assumed by Reynolds. The trial court determined that the

instruction was relevant for purposes of ascertaining the intent of the parties in drafting the sales agreement.

In reviewing a challenge to an instruction given by the trial court, this Court must review the instructions in their entirety. *Federoff v Meyer Weingarden & Sons, Inc,* 60 Mich App 382, 391; 231 NW2d 417 (1975). In addition to the instruction complained of, the court also instructed the jury that they must consider the conditions and circumstances surrounding the contracting parties and the subject matter with which those parties dealt, that they must give a meaning to the contract that would be attached to it by a reasonably intelligent person, that they were to give the language of the contract its ordinary significance as far as possible, and that they were to deduce the intention of the parties from the entire instrument. This Court's review of the instructions leads to the conclusion that the jury was correctly instructed that they must determine what the intent of the parties was with regard to the allocation of liabilities from all of the facts and circumstances surrounding the execution of the contract. The challenged instruction was relevant to that ultimate determination and did not remove that ultimate determination from the jury's consideration.

Affirmed.