JOHNSON v. HALEY.

1. CONSTITUTIONAL LAW—DUE PROCESS.
   Due process requires only a "day in court," not a series of such days.

2. JUDGMENT—JURISDICTION—COLLATERAL ATTACK.
   The parties are precluded from collaterally attacking a judgment on the ground that the court had no jurisdiction over defendant, where he has appeared in the action to object that the court has no jurisdiction over him and the court overrules the objection and judgment is rendered against him.

3. SAME—RES JUDICATA—JURISDICTION—SPECIALLY-APPEARING DEFENDANT.
   Determination by court that it has jurisdiction over defendant is *res judicata*, precluding relitigation, even though such determination be erroneous on the facts or on the law, where the question is raised by specially-appearing defendant and he fails to appeal or final result of appeal is adverse.

4. SAME—JURISDICTION—DUE PROCESS.
   A defendant who appears for the purpose of objecting that the court has no jurisdiction over him thereby submits to the court for its determination the question whether the court has jurisdiction over him that is *res judicata* and a judgment based thereon does not deprive him of property without due process in the absence of a reversal on appeal.

5. SAME—PUBLIC POLICY.
   Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that the matters once tried shall be considered forever settled as between the parties.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 12 Am Jur, Constitutional Law § 573.
[2] 3 Am Jur, Appearances § 11; 30A Am Jur, Judgments § 880.
[3] 30A Am Jur, Judgments § 342.
[4] 3 Am Jur, Appearances, §§ 4, 42.
[5] 30A Am Jur, Judgments § 326.
[7] 30A Am Jur, Judgments § 241.

6. CONSTITUTIONAL LAW—DUE PROCESS—JURISDICTION.

The refusal of the enforcing court to examine the jurisdiction of the court of the sister State which rendered the judgment, after the question of jurisdiction had been litigated, is not a denial of due process (US Const, art 4, § 1).

7. JUDGMENT — RES JUDICATA — JURISDICTION — FULL FAITH AND CREDIT — COLLATERAL ATTACK.

Unappealed determination by California court that it had jurisdiction over the person of specially-appearing defendant made the question *res judicata* in the courts of that State and must be accorded full faith and credit and is not subject to collateral attack in this, the enforcing State (US Const, art 4, § 1).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 5, 1959. (Docket No. 41, Calendar No. 47,802.) Decided October 13, 1959. Rehearing denied November 24, 1959.

Case by Helen Johnson against Catherine Ella Rae Haley based on judgment entered in California under provision in motor vehicle code for service of process on nonresidents. Judgment for defendant. Plaintiff appeals. Reversed.

*Albert M. Colman,* for plaintiff.

*Berris, Poindexter & Berris* (*Thomas L. Poindexter,* of counsel), for defendant.

SMITH, J. The validity of a California judgment, rendered against a resident of Michigan, is before us.

Defendant Catherine Haley is, in the words of the pretrial statement, in the "automobile driveaway business with office in Detroit." She arranges the delivery of cars from Detroit to distant points. Her legal status with respect to the owner of the car and driver thereof is controverted. One of the cars being delivered under this arrangement, whatever it may be, was involved in an accident in the city of Oakland, California, causing plaintiff to suffer personal injuries.

Plaintiff filed suit in the superior court of Alameda county, California, against defendant Haley, and against the driver of the car, James Caldwell, and the owner, Frank Loney, alleging that Caldwell was acting as Haley's agent and that the accident occurred while he was acting within the course of his agency.

Service of summons was made upon the director of motor vehicles of the State of California, under section 404 of the California vehicle code,* with copies, as required by the statute, to defendant in Detroit by registered mail. She appeared specially in the California court, moving to quash service of summons upon the grounds that she was not a resident of California, was not the owner of the car, had never operated any car described in the complaint within the State of California, and that the driver, James Caldwell, was neither her agent nor her servant but was, rather, an independent contractor. In support of these assertions defendant attached her affidavit, describing in detail her arrange-

---

* "The acceptance by a nonresident of the rights and privileges conferred upon him by this code or any use of the highways of this State as evidenced by the operation by himself or agent of a motor vehicle upon the highways of this State or in the event such nonresident is the owner of a motor vehicle then by the operation of such vehicle upon the highways of this State by any person with his express or implied permission, is equivalent to an appointment by such nonresident of the director or his successor in office to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against said nonresident operator or nonresident owner growing out of any accident or collision resulting from the operation of any motor vehicle upon the highways of this State by himself or agent, which appointment shall also be irrevocable and binding upon his executor or administrator. Where the nonresident has died prior to the commencement of an action brought pursuant to this section, service of process shall be made on the executor or administrator of such nonresident in the same manner and on the same notice as is provided in the case of the nonresident. Where an action has been duly commenced under the provisions of this section by service upon a defendant who dies thereafter, the court must allow the action to be continued against his executor or administrator upon motion with such notice as the court deems proper." (California vehicle code, § 404[a], Deering's California Codes Annotated, 1957 Supp.)

ments both with the driver of the car, defendant
Caldwell, and the owner of the car, defendant Loney,
denied control over Caldwell, and submitted a copy
of the contract which, she says, she "arranged" be-
tween Caldwell and Loney. The California court
thereafter held that defendant Haley's motion to ap-
pear specially for the purpose of moving to quash
service of summons be granted but, as to the motion
itself, held that "the motion of said defendant Cather-
ine Ella Rae Haley to quash service of summons is
denied." Subsequent thereto, in defendant Haley's
words, she "did not appear and defend and was sub-
jected to judgment by default."

Suit was then commenced in the circuit court for
Wayne county, praying for judgment in Michigan
based upon the California judgment, an authenti-
cated copy of which was placed in evidence. Plain-
tiff prays, in effect, that we give full faith and credit[*]
to the California judgment.

Defendant, however, contended again in the Wayne
circuit, as she had before the California court, that
the driver of the car was an independent contractor,
that she (Haley) neither owned nor operated the
car, and that the State of California had no juris-
diction over her. This argument as to agency was
here more successful than in California. The circuit
judge entered judgment of no cause for action.

Before us defendant argues that the circuit judge
has made his decision upon a question of fact (was
or was not driver Caldwell the agent of defendant
Haley?) and, decision having been made in defend-
ant's favor, "fully supported by the evidence," this
court should not disturb.

The difficulties with the argument thus presented
are several. In the first place the fact-law dichotomy
relied upon, save in the simplest of contexts, is slip-

---

[*] U.S. Constitution, art 4, § 1.

pery and ambiguous.* Whether John Doe is the husband of Mary Roe, rather than Mary's son, or her brother, may be described as an issue of fact in a controversy over identity. But if John has 2 alleged former wives living, one divorced by mail from Latin America, the other divorced in this country but with questionable service of process, the question whether Mary is the wife of John may be a legal question of enormous complexity. Likewise here, whether driver Caldwell was the agent of defendant Haley presents one of the knottiest legal problems our courts face today, the distinction between agent and independent contractor. In the context here presented it is not merely a question of fact.

Even, however, if the question could reasonably be regarded as one merely of simple fact, we would have made but little progress towards the resolution of the controversy before us. True it is that we are reluctant to disturb on appeal determinations of fact below. But this self-imposed canon of our scope of review does not embody a whole code of justice, answering, willy-nilly, any constitutional or procedural problem presented to us, even if involving (as here, for example) the scope of *res judicata* or the interpretation of the full faith and credit clause.

The controlling issue may be very simply stated: In how many courts may a party litigate his case? If he loses in, say Ohio, can he relitigate in Indiana, in Illinois, in Michigan, as his judgment-creditor pursues him across the nation?

Modern courts say not. Due process requires only 1 day in court, not a series of days. The Restatement of the Conflict of Laws (1948 Supp, § 451) states with accuracy the current law in the following terms:

* See Brown, Fact and Law in Judicial Review, 56 Harv L Rev 899.

"(1) Where a defendant appears in an action to object that the court has no jurisdiction over him and the court overrules the objection and judgment is rendered against him, the parties are precluded from collaterally attacking the judgment on the ground that the court has no jurisdiction over the defendant."

The Restatement of Judgments, § 9, embracing cognate material, contains the following:

"Where, however, the defendant appears in the action only to object that the court has no jurisdiction over him, that is where he enters a special appearance, the court does not acquire jurisdiction over him because of his appearance (see § 20), except to decide the question so raised. But if the court determines that it has jurisdiction over him, even though that determination is erroneous on the facts (see illustrations 1 and 2) or on the law (see illustration 3), the determination is *res judicata* between the parties. This is an application of the general principle of *res judicata,* precluding the parties from relitigating a matter determined by a court after a fair opportunity has been afforded to them to litigate the matter (see § 1).

"If the defendant appears in an action for the purpose of objecting that the court has no jurisdiction over him, he thereby submits to the court for its determination the question whether the court has jurisdiction over him. If the court erroneously determines that it has jurisdiction over the defendant, he has ground for reversal in an appellate court, and ground for carrying the case to the supreme court of the United States since a judgment rendered against him by a court having no jurisdiction over him deprives him of property without due process of law in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. If, however, he does not avail himself of these remedies, or if the judgment is affirmed, or if the appellate court or the supreme court of the United States de-

clines to consider the case, the defendant cannot thereafter successfully contend that the judgment was void, even though in fact the court had no jurisdiction over him.   The defendant, having submitted the question of jurisdiction to the court, the court has jurisdiction to determine the question of its jurisdiction over the defendant, and the determination of that question is *res judicata.*"

The leading case on this phase of the narrow issue before us is *Baldwin* v. *Iowa State Traveling Men's Association,* 283 US 522 (51 S Ct 517, 75 L ed 1244). There the defendant appeared specially in the Federal district court in Missouri and moved to set aside service of process, quash the return, and dismiss the case for want of personal jurisdiction.   The motion was overruled, with leave to plead within 30 days. No plea was filed and the cause proceeded to judgment.   The district court for southern Iowa, having reheard the attack upon jurisdiction, dismissed action brought on the judgment.

In reversing such holding the court held as follows (pp 524–526):

"The substantial matter for determination is whether the judgment amounts to *res judicata* on the question of the jurisdiction of the court which rendered it over the person of the respondent.   It is of no moment that the appearance was a special one expressly saving any submission to such jurisdiction.   That fact would be important upon appeal from the judgment, and would save the question of the propriety of the court's decision on the matter even though after the motion had been overruled the respondent had proceeded, subject to a reserved objection and exception, to a trial on the merits (citing cases).   The special appearance gives point to the fact that the respondent entered the Missouri court for the very purpose of litigating the question of jurisdiction over its person.   It had the election not to appear at all.   If, in the absence of appearance,

the court had proceeded to judgment and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction (citing cases). It had also the right to appeal from the decision of the Missouri district court, as is shown by *Harkness* v. *Hyde,* 98 US 476 (25 L ed 237), and the other authorities cited. It elected to follow neither of those courses, but, after having been defeated upon full hearing in its contention as to jurisdiction, it took no further steps, and the judgment in question resulted.

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause."

It may be noted, in passing, that in an action to enforce a foreign judgment, the refusal of the enforcing court to examine the jurisdiction of the court of the sister State which rendered the judgment, after the question of jurisdiction had been litigated, is not a denial of due process. *Chicago Life Insurance Co.* v. *Cherry,* 244 US 25 (37 S Ct 492, 61 L ed 966).

The superior court of Alameda county, California, then, having ruled as to the controverted issue presented in the special appearance that it had jurisdiction over the person of the defendant Haley, and no appeal having been taken therefrom, that question was *res judicata* in the courts of California. See *Estate of Estrem,* 16 Cal 2d 563 (107 P2d 36). The full faith and credit clause requires that upon the facts before us we give the judgment the same effect

that it has in the State of its rendition. We hold in accordance with the rulings of the supreme court of the United States (See *Sherrer* v. *Sherrer,* 334 US 343, 350 [68 S Ct 1087 and 68 S Ct 1097, 92 L ed 1429, 1 ALR2d 1355]; *American Surety Company* v. *Baldwin,* 287 US 156 [53 S Ct 98, 77 L ed 231, 86 ALR 298]) that "the doctrine of *res judicata* must be applied to questions of jurisdiction arising in State courts involving the application of the full faith and credit clause where, under the law of the State in which the original judgment was rendered, such adjudications are not susceptible to collateral attack." The reasons for such holding are not obscure. Among others, without full faith and credit, our nation would remain merely a loose aggregation of independent sovereignties, uninterested in, and oblivious to, the rights and duties imposed by the laws and judgments of sister sovereign States. See the opinion of Mr. Chief Justice Stone, speaking for the court in *Magnolia Petroleum Co.* v. *Hunt,* 320 US 430, 439, 440 (64 S Ct 208, 88 L ed 149, 150 ALR 413). We would not be taken as ruling beyond the facts before us. This is an action for money judgment rendered in a civil action in a foreign State after contest and decision in such State upon jurisdiction over the person of the defendant.

The circuit court was in error in entering judgment of no cause for action. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.